COL-TEX REFINING COMPANY V. RAILROAD COMMISSION OF TEXAS.

No. A-3024. Decided June 6, 1951.
Rehearing overruled July 11, 1951.
(240 S. W.,2d Series, 747.)

*Brown, Darrough and Ball, S. S. Brooks* and *W. H. Brown,*
all of Oklahoma City, Okla., *Charles L. Black* and *John W. Stayton,* both of Austin, for petitioner.

Petitioner is not a common purchaser with respect to the
Sharon Ridge and Coleman fields as it purchased no oil in those
fields, and the Court of Civil Appeals erred in holding that it
was. Johnson v. Riverside County Select Groves, 4 Cal. App.
2d 114, 40 Pac. 2d 530; Farmers' and Mechanics' National Bank
v. Hanks, 104 Texas 320, 137 S.W. 1120; Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S.W. 2d 73.

*Price Daniel,* Attorney General, *Charles E. Crenshaw,* Assistant Attorney General, for the Railroad Commission of Texas, *Wallace H. Scott, Jr.,* of Austin, for intervenor, Howard County Producers and Royalty Owners Association, respondents.

The Sharon Ridge Fields should be included in the ratable purchase order along with the other fields. Humble Oil & Refining Co. v. Trapp, 194 S.W. 2d 781; Lawton Refining Co. v. Amerada Petroleum Co., 104 Okla. 231, 231 Pac. 252; Railroad Com. v. Mack-hanl Petroleum Co., 186 S.W. 2d 351.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This suit was filed by petitioner, Col-Tex Refining Company, to invalidate and to enjoin the enforcement of an order entered by respondent, Railroad Commission of Texas, on November 29, 1949. The order is set out in the opinion of the Court of Civil Appeals and need not be repeated here. The order required petitioner to take oil ratably, without discrimination in favor of one producer or person as against another in the same field and without discrimination between fields, from all of the wells in all of the fields served by its pipe line system including the wells in the Sharon Ridge 1700' and the Sharon Ridge 2400' fields in which petitioner had no pipe line facilities but from which it secured all of the allowable production by purchase from Coffield & Guthrie, Inc., owner and operator of the only pipe line and gathering system in the Sharon Ridge fields. Howard County Producers and Royalty Owners Association intervened and defended the validity of the Commission's order. The trial court granted the relief sought. The Court of Civil Appeals reversed the judgment of the trial court, vacated the injunction, and rendered judgment that petitioner take nothing. 236 S.W. 2d 221.

The case involves the proper construction of Sections 8 and 8aa of Article 6049a, V.A.C.S. (Acts 41st Leg., 5th C.S., 1930, p. 171, as amended by Acts 42nd Leg., 1st C.S., 1931, p. 58) and the application of the provisions thereof to the following undisputed facts:

Col-Tex Refining Company owns and operates an oil refinerey in Colorado City in Mitchell County and in connection with its refineery owns and operates also 65 miles of oil pipe lines in Mitchell, Howard, Glasscock, and Scurry Counties. Petitioner purchases and through its pipe lines and gathering systems takes oil from the producers in the Howard Glasscock, Iatan East Howard, Iatan North Howard, Westbrook, and Snyder

fields. Petitioner's pipe lines do not now and have never entered the Sharon 1700' and 2400' fields, but under the terms of a written contract dated August 8, 1947, petitioner has taken and now takes all of the oil purchased and produced by Coffield & Guthrie, Inc., in the Sharon Ridge fields. The pipe line facilities of Coffield & Guthrie, Inc., are the only pipe line facilities connected with production in the Sharon Ridge fields and the oil purchased and produced by Coffield & Guthrie, Inc., is delivered to petitioner at petitioner's Westbrook station located some eight to twelve miles from the Sharon Ridge fields.

The Col-Tex—Coffield & Guthrie contracts, after providing that Coffield & Guthrie should gather, transport and deliver all of the oil it could procure in the Sharon Ridge field to Col-Tex at its Westbrook Station and that Col-Tex should purchase and take all of such oil at a price "based on average posted price by any three major companies for like grades of crude oil in the area in which it is received on the day on which it is received * * *, plus twelve and one-half cents per barrel," contained the following provision:

"The title to such oil shall remain in Coffield & Guthrie, Inc., until delivered in the Col-Tex Refinery Company's tanks, at which time the title shall pass to said Col-Tex Refining Company. Said Col-Tex Refining Company shall have no control nor right of control, nor right to exercise any authority over the manner of gathing, transporting or delivering any of said oils, but all of the same shall be under the exclusive control and management of Coffield & Guthrie, Inc."

Prior to 1949 Col-Tex purchased from producers in the Howard Glasscock, Iatan East Howard, Iatan West Howard, Westbrook and Snyder fields all of the oil said producers were allowed to produce under proration orders issued by the Railroad Commission of Texas, as well also as all of the oil tendered to it at its Westbrook Station by Coffield & Guthrie, Inc. Coffield & Guthrie in turn purchased from producers in the Sharon Ridge fields all of the oil said producers were allowed to produce. under proration orders issued by the Railroad Commission. During the latter part of 1948 Col-Tex's need for oil diminished with the result that during 1949 Col-Tex purchased and took from the producers only 33% to 70% of the allowable production in the five fields its pipe lines served directly while continuing to take 100% of the oil tendered to it by Coffield & Guthrie, Inc., that corporation continuing at the same time to purchase and take 100% of the allowable production in the

Sharon Ridge fields. The pipe line owned and operated by Coffield & Guthrie is a common carrier.

On October 25, 1949, the Railroad Commission held a hearing to inquire into the question as to whether or not the facilities of Col-Tex were being used in such manner as that discrimination resulted as between fields which were served by such facilities and whether or not the Common Purchaser Act was being violated by Col-Tex. This hearing resulted in the order complained of.

Article 6049a, known as the Common Purchaser Act, was originally enacted by the 41st Legislature in 1930. As enacted it contained Section 8 which, with minor amendments, reads as follows:

"Sec. 8. Every person, association of persons, or corporation who purchases crude oil or petroleum in this State, which is affiliated through stock ownership, common control, contract, or otherwise with a common carrier by pipe line, as defined by law, or is itself such common carrier, shall be a common purchaser of such crude petroleum and *shall purchase oil offered it for purchase without discrimination in favor of one producer or person as against another in the same field, and without unjust or unreasonable discrimination as between fields in this State; the question of justice or reasonableness to be determined by the Railroad Commission, taking into consideration the production and age of wells in respective fields and all other proper factors."* (Emphasis ours).

The act was amended and reenacted by the 42nd Legislature in 1931. As amended and reenacted it carried forward Section 8 and added Section 8aa which reads as follows:

"Sec. 8aa. In addition to persons enumerated in Section 8, hereof, any and all other persons, association of persons, or corporations, operating any pipe line, which may now, or hereafter, purchase crude oil, petroleum, or natural gas in this State whether they be common carriers or affiliated with common carriers or not, shall be a common purchaser of such crude oil, petroleum or natural gas, and *shall purchase crude oil, petroleum or natural gas, offered it for purchase without discrimination in favor of one producer or person as against another as provided in Section 8 hereof."* (Emphasis ours).

Petitioner's attack on the order of the Railroad Commission is two-fold: 1st, that since its duties and obligations in the pur-

chase of oil are governed by the provisions of Section 8aa of Article 6049a, the Commission is without authority to require it to take oil "without unjust or unreasonable discrimination as between fields"; and 2nd, even if authority exists in the Commission to require it to take oil "without unjust or unreasonable discrimination as between fields" in which it is a common purchaser, it is yet not a common purchaser in the Sharon Ridge fields since it purchases no oil in said fields.

With respect to these contentions the trial court held that Section 8aa "does not require a common purchaser to purchase without unjust or unreasonable discrimination as between fields," and that since Col-Tex is not, and has not been purchasing oil in the Sharon Ridge fields, it "is not, and has not been, a common purchaser of oil in said field." The Court of Civil Appeals disagreed with the trial court .on both points.

■ Petitioner is not a "common purchaser" under the provision of Section 8 of Article 6049a. It is too plain to admit of argument that only common carriers and persons, association of persons and corporations affiliated with common carriers through "stock-ownership, common control, contract or otherwise," purchasing oil in this state, are common purchasers under the terms of Section 8. It has been judicially determined that the pipe line owned and operated by Col-Tex is not a common carrier. Col-Tex Refining Co. v. Hart, Tex. Civ. App., 144 S.W. 2d 909 (writ ref.). There is no contention made that Col-Tex is affiliated with Coffield & Guthrie, Inc., through stock-ownership or common control. Neither is it seriously contended here by respondent that Col-Tex is "affiliated" with Coffield & Guthrie through "contract" within the meaning of Section 8 even though it appears that the Court of Civil Appeals rested its decision, in part at least, upon a holding that it is. It is true, indeed, that petitioner purchases oil from Coffield & Guthrie, Inc., under a written contract but that fact alone does not make petitioner an "affiliate" of Coffield & Guthrie in the sense in which the legislature used the term. The rule of ejusdem generis, when applied to the phrase "which is affiliated through stock-ownership, common control, contract, or otherwise", excludes the idea that by the execution of a simple purchase contract the purchaser and seller, though neither having the right to nor exercising any control over each other, would thereby become "affiliated". Stanford et al v. Butler et al, 142 Texas 692, 181 S.W. 2d 269 153 A.L.R. 1054; Fowler v. Hults, 138 Texas 636, 161 S.W. 2d 478. It follows that petitioner's duties and obligations

in the purchase of oil as a common purchaser are governed by Section 8aa of Article 6049a.

■ Does Section 8aa require those who are made common purchasers by such section to purchase oil "without unjust or unreasonable discrimination *as between fields"?* We think not. The section does not say that it does. It can only be made to say so by construing the phrase "without discrimination *in favor of one producer or person as against another as provided in Section 8 hereof"* to mean so. This would be a forced and strained construction of the language just quoted. Section 8 contains two prohibitions. It prohibits those made common purchasers by its terms—common carriers and those affiliated with common carriers—from (1) discriminating *"in favor of one producer or person as against another in the same field",* and (2) from *"unjust or unreasonable discrimination as between fields."* Section 8aa expressly adopts by reference only that part of Section 8 which prohibits "discrimination in favor of one producer or person against another." It does not expressly adopt by reference that part of Section 8 which prohibits "unjust or unreasonable discrimination as between fields." The discrimination prohibited by Section 8 "in favor of one producer or person as against another" is only as that discrimination might be practiced "in the same field". Likewise the discrimination prohibited by Section 8aa by those made common purchasers by its provisions is as that discrimination might be practiced in favor of one producer or person as against another, "as provided in Section 8 hereof"; that is, "in the same field."

In view of our conclusion that petitioner cannot be compelled to purchase and take oil "without unjust or unreasonable discrimination as between fields" we find it unnecessary to determine whether petitioner is in fact a common purchaser in the Sharon Ridge fields.

■ It is argued that the interpretation we have given Sections 8 and 8aa of Article 6049a as applied to the facts in this case will result in pipe line proration contrary to the general purpose and intent of the legislature in the enactment of the common purchaser act. Any such result would be regrettable indeed but the remedy lies in the legislative and not in the judicial forum. The language of Section 8aa appears to us to be plain and unambiguous and its meaning clear and obvious. We can only enforce the statute as written and have no right to create or to find an ambiguity where none exists in order to call into play generally recognized rules which are used as aids to the

construction of ambiguous statutes. Fire Ass'n of Philadelphia v. Love, 101 Texas 376, 108 S.W. 158, 160; Weaver et al v. Robison et al, 114 Texas 272, 268 S.W. 133, 141; Simmons v. Arnim, 110 Texas 309, 220 S.W. 66, 70; Texas Highway Commission et al v. El Paso Bldg. & Const. Trades Council, 149 Texas 457, 234 S.W. 2d 857, 863.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered June 6, 1951.

Rehearing overruled July 11, 1951.