IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 27, 2004

## STATE OF TENNESSEE v. DAVID W. SONNEMAKER

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 227582   Rebecca Stern, Judge**

---

**No. E2003-01402-CCA-R3-CD**
**March 12, 2004**

---

The Defendant, David W. Sonnemaker, appeals from the Hamilton County Criminal Court's revocation of his probation that he received for his guilty plea to sexual battery. The Defendant contends that: (1) he did not receive effective assistance of counsel at his probation revocation hearing; and (2) he was not provided adequate notice of the probation violation or given an opportunity to be heard. We affirm the lower court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

J. Chris Helton, Chattanooga, Tennessee (on appeal), and Rich Heinsman, Chattanooga, Tennessee (at probation revocation hearing), for the appellant, David W. Sonnemaker.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; William H. Cox, District Attorney General; and Mary Sullivan Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

On May 19, 1999, the Hamilton County Grand Jury indicted the Defendant, David W. Sonnemaker, for one count of rape. The Defendant pled guilty to sexual battery, a Class E felony, and the trial court sentenced him in December of 1999 as a Range I, standard offender to a suspended two-year sentence, with four years of intensive probation. The trial court also ordered that the Defendant pay court costs and submit to a DNA[1] test. On February 11, 2003, Melanie Moyer, the Defendant's probation officer, filed a probation violation report alleging that the Defendant refused

---

[1]Deoxyribonucleic acid.

to submit to DNA testing. The trial court issued a summons for the Defendant to appear and show cause why he should not serve the sentence imposed by the court.

At the probation violation hearing, which was held on March 25, 2003, the State read the probation violation report into evidence. The report stated that, on June 26, 2002, the court ordered the Defendant to report to the county Health Department to provide a DNA specimen. An appointment to provide a DNA specimen was scheduled for July 30, 2002, at the Hamilton County Health Department. The report indicated that the Defendant called Moyer and informed her that he did not wish to comply with this order and that his attorney was researching the matter. In the report, Moyer stated that she explained to the Defendant that the court instructed him, through its order, to provide a specimen. She advised the Defendant that if his attorney had not spoken with the court or filed a motion with the court prior to his appointment, he was required to keep his July 30th appointment with the Health Department. On July 31st, the Defendant called Moyer and left a message that he had been studying for a physics exam and "totally forgot" about the appointment at the Health Department. The report indicated that he never called the Health Department to reschedule the appointment. The report also noted that this was the Defendant's sixth probation revocation filed with the court.

Moyer testified that the Defendant's probation was scheduled to expire in December of 2003. Moyer stated that the Defendant's violation of his probation had been continuous in that he traveled to Atlanta every weekend and went to Colorado a couple of times on ski trips. Moyer testified that the court had ordered that the Defendant be allowed to travel due to his participation in body building competitions, and although he had not engaged in body building activities in the last eighteen months, he continued to travel outside the state regularly. The probation officer testified that the Defendant would set and keep his appointments, but that the appointments had to be made around the "trips that [the Defendant] takes." Moyer stated that, prior to the Defendant's last trip, he called her and left a message that he was leaving. The probation officer stated that she rescheduled his appointment due to some other obligations on her behalf, and the Defendant called and said he could not make the meeting on that day because he was going to be in Colorado. The probation officer stated that, at the time of the hearing, she had not seen the Defendant in a month. On cross-examination, the officer testified that she had been the Defendant's probation officer from November of 2001 up to the time of the hearing, March 25, 2003.

The Defendant's attorney contended before the trial court that he was investigating the applicability to the Defendant of the section of the Tennessee Code that requires a defendant to take a DNA test. The trial court reminded the attorney that the Defendant agreed to provide a specimen and that the court ordered the DNA test. The court further noted that the Defendant had not appealed that order.

At the conclusion of this proof, the trial court found that the Defendant failed to abide by the provisions of his probation as ordered by the court and ordered that the Defendant's probation be revoked for sixty days and that, thereafter, the Defendant be released on intensive probation for the balance of his sentence. In so doing, the trial court stated:

I find that [the Defendant] is in violation of his probation conditions by failing to give a DNA sample and also not reporting as required by the probation officer and instead trying to work his appointments around his travel schedule. That was not what I contemplated. When I allowed him to travel, it was with the understanding that he make all of his probation appointments. They are not waiting for him. He must make those appointments whether it means missing a trip to Atlanta or to ski in Colorado or whatever it is.

The Defendant filed a petition to rehear alleging that his attorney thought the hearing was a scheduling hearing and not a hearing on the merits of the probation revocation. The petition alleged that the Defendant's attorney had not read the violation report and that the show cause order was not a petition to revoke probation. In the petition, the Defendant requested a final hearing. The trial court denied this petition, and the Defendant appeals contending that: (1) he received ineffective assistance of counsel at the probation revocation hearing; and (2) he was not provided adequate notice of the probation violations or given an opportunity to be heard.

## II. Analysis

A trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, -311(e) (1997 & Supp. 2002). If the trial court revokes probation, it can "(1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the remaining probationary period for a period not to exceed two years." State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). The decision to revoke probation is within the sound discretion of the trial court, and its judgment will be reversed only upon a showing of an abuse of discretion, reflected in the record by an absence of substantial evidence to support the trial court's findings. State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). In order for this Court to conclude that the trial court abused its discretion, it must be established that the record contains no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred. State v. Harkin, 811 S.W.2d 79, 82 (Tenn. 1991).

### A. Ineffective Assistance of Counsel

In Richard Lee Kiser v. State, Nos. 01C01-9503-CC-00071, 01C01-9503-CC-00082, 1995 WL 715510, at *3 (Tenn. Crim. App., at Nashville, Dec. 6, 1995), *no perm. app. filed*, this court explained how an ineffective assistance of counsel claim relates to a revocation hearing:

[T]he right to counsel at a revocation of probation hearing is not guaranteed by either the Constitution of the United States or the Constitution of the State of Tennessee. Thus, the effectiveness of counsel at a revocation hearing is not a constitutional issue, except in those cases where the performance of counsel is so defective that another right which is constitutionally guaranteed at a revocation hearing is violated.

See State v. Larry Ammons, No. W2001-00834-CCA-R3-CD, 2002 WL 1482675, at *4-5 (Tenn.

Crim. App., at Jackson, Mar. 18, 2002), *perm. app. denied* (Tenn. Sept. 23, 2002).

In the case under submission, the Defendant contends that he did not receive effective assistance of counsel because his counsel "[had] not read the probation violation report, had not prepared for the hearing, called no witnesses, asked only one question of the States [sic] witnesses and readily admitted to the Court that he was providing the [Defendant] ineffective assistance of counsel." The record reflects that one of the conditions of the Defendant's probation was that he submit to a DNA test. On June 26, 2002, the trial court ordered the Defendant to report to the county Health Department to provide a DNA specimen. The Defendant missed the appointment and, as of the time of the hearing, had not rescheduled or submitted to a DNA test. At the probation revocation hearing, the Defendant offered no evidence to contradict that he refused to submit to a DNA test. The Defendant admitted his failure to submit to DNA testing and could not, therefore, have been prejudiced by counsel's deficient performance in not reading the violation report. See State v. Larry Ammons, No. W2001-00834-CCA-R3-CD, 2002 WL 1482675, at *5 (Tenn. Crim. App., at Jackson, Mar. 18, 2002), *perm. app. denied* (Tenn. Sept. 23, 2002). Accordingly, we conclude that this issue is without merit.

## B. Defendant's Due Process Rights

The Defendant contends that the trial court erred in revoking his probation because he was not provided adequate notice or the opportunity to be heard, in violation of his due process rights. The Defendant asserts on appeal that he never received a copy of the probation violation report. The Defendant did not make this claim before the trial court. Generally, appellate courts review only questions presented for determination in the trial court. Hester v. State, 2 Tenn. Crim. App. 11, 450 S.W.2d 690, 611 (1969); State v. Samuel Kimoe Robinson, No. 01C01-9803-CC-00153, 1999 WL 173671, at *2 (Tenn. Crim. App., at Nashville, Mar. 31, 1999), *perm. app. denied* (Tenn. June 28, 1999). Because we find that the Defendant raises this issue for the first time on appeal, we conclude that he has waived this issue. Tenn. R. App. P. 36(a). Notwithstanding this procedural default by the Defendant, we elect to review the Defendant's claim.

A defendant who has been granted a suspended sentence and placed on probation has a conditional liberty interest that is protected by due process of law. See State v. Merriweather, 34 S.W.3d 881, 884 (Tenn. Crim. App. 2000); State v. Stubblefield, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). In Black v. Romano, 471 U.S. 606, 613 (1985), the United States Supreme Court reiterated that the due process rights given in a probation revocation proceeding are not as expansive as those rights afforded to defendants in criminal trials. The Court stated, "[O]ur precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial." In Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973), the Supreme Court set out the "minimum requirements of due process" for final probation revocation hearings:

> (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to
> the [probationer or] parolee of evidence against him; (c) an opportunity to be heard

in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds a good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking [probation or] parole.

Id. at 786 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Tennessee courts have held that these due process requirements are met when there is proof that the defendant had actual notice of the charges against him, see State v. Christopher Lynch, No. E2001-00197-CCA-R3-CD, 2002 WL 554462, at *3 (Tenn. Crim. App., at Knoxville, Apr. 16, 2002) (citations omitted) ("Though written notice is preferred, . . . actual notice will suffice to meet the due process requirements in a revocation of probation proceeding"), and when the trial court makes oral findings of fact at the probation revocation hearing sufficient to show the grounds for the revocation and the reasons for the court's findings. See State v. Leiderman, 86 S.W.3d 584, 591 (Tenn. Crim. App. 2002).

In the case presently before us, while defense counsel stated that he had not read the violation report, the record establishes that the criminal summons relating to the violation report was served on counsel. Thus, the defendant received written notice of the violation in the form of the criminal summons, which clearly states that the violation relates to the failure to submit to DNA testing. Further, the record demonstrates that all parties knew that the failure to submit to testing was the reason for the revocation hearing. See State v. Peck, 719 S.W.2d 553, 557 (Tenn. Crim. App. 1986) (holding that proof that the defendant had actual notice of the violation will satisfy due process); see also Stamps v. State, 614 S.W.2d 71, 73-74 (Tenn. Crim. App. 1980); State v. Clifford W. Jackson, No. 02C01-9802-CR-00041, 1999 WL 615742 (Tenn. Crim. App., at Jackson, Aug. 13, 1999); State v. James C. Wolford, No. 03C01-9708-CR-00319, 1999 WL 76447 (Tenn. Crim. App., at Knoxville, Feb. 18, 1999), perm. app. denied (Tenn. Feb. 18, 1999). Thus the Defendant's due process rights were not violated.

Because the trial court based its decision to revoke probation, at least in part, on the Defendant's practice of making the probation officer work around his travel schedule and because no notice of this violation was given prior to the hearing, the trial court could not have revoked probation on this basis. The error was harmless, however, because the Defendant's failure to submit to DNA testing is sufficient to support the revocation.

### III. Conclusion

In accordance with the foregoing, we conclude that the trial court did not abuse its discretion by revoking the Defendant's probation. Therefore, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE

-5-